IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

---

STEVEN TOMPOROWSKI,

                      Petitioner,                      OPINION AND ORDER

      v.                                                   08-cv-0183-slc

GREG GRAMS, Warden,
Columbia Correctional Institution,

                      Respondent.

---

Steven Tomporowski, an inmate at the Columbia Correctional Institution, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Before the court is respondent's motion to stay the petition and hold it in abeyance so that petitioner can exhaust his state court remedies with respect to two claims that he included in his petition but did not raise in his state court direct appeal. Having considered the motion and hearing no opposition from petitioner, I am granting the motion.

The following facts are drawn from the petition, documents available electronically and the state's motion. Many are taken verbatim from the magistrate judge's order entered July 8, 2008.

1

FACTS

Petitioner was convicted in 2004 in the Circuit Court for Richland County of the murders of his mother, father and uncle. In its unpublished opinion in State v. Tomporowski, 2007 WI App 34, ¶¶ 2-3, 299 Wis. 2d 783, 728 N.W. 2d 374 (Table), the Wisconsin Court of Appeals described the background of the case as follows:

> Tomporowski was charged with the three homicide counts based on allegations that he had killed his parents and an uncle on a weekend retreat. The court ordered a competency evaluation at defense counsel's request. After reviewing three expert reports, the court found Tomporowski competent to stand trial. Tomporowski then entered pleas of not guilty and not guilty by reason of mental disease or defect. Tomporowski subsequently changed his pleas to guilty on the first phase of the bifurcated proceeding, but proceeded to trial on the mental responsibility phase.
>
> Following a bench trial, the court found that Tomporowski suffered from a mental disease, which may have been either schizophrenia or a personality disorder. However, it also found that whatever mental disease Tomporowski suffered from was "complicated" by persistent use of LSD, and that the drug use accounted for much of Tomporowski's "bizarre" behavior. Based on evidence Tomporowski had motive to kill his parents and had undertaken considerable preparation and planning to do so, and also appeared to have been feigning some symptoms while in jail, the court further found that Tomporowski's mental disease had not prevented him from appreciating the wrongfulness of his conduct or conforming his behavior to the requirements of the law. The court concluded that Tomporowski was mentally responsible, and sentenced him to three consecutive terms of life imprisonment without the possibility of extended supervision.

In postconviction motions and on appeal, petitioner raised the following claims: 1) his pleas were invalid because the trial court failed to advise him that the court could

sentence him to life in prison on each count without the possibility of release on extended supervision or that the sentences could be imposed consecutively; 2) he was entitled to a new trial or to be resentenced on the basis of a post-conviction mental evaluation and school records that refuted the possibility that his symptoms had been caused primarily by LSD use; 3) trial counsel was ineffective by failing to present additional expert evidence about whether petitioner satisfied the diagnostic criteria for schizophrenia and for failing to object to information related to his apparent intelligence and the degree of planning involved in the offense; 4) the court erred in finding that petitioner's behavior could be explained merely by his drug use; 5) a new trial should be granted in the interests of justice; and 6) petitioner's sentence was unduly harsh in light of his mental problems. The state court of appeals rejected all of petitioner's claims and affirmed his conviction. On May 22, 2007, the Wisconsin Supreme Court denied petitioner's petition for review.

In late November or early December 2007, petitioner filed a submission in the Wisconsin Court of Appeals entitled "Collateral Attack," in which he set forth several grounds for a new trial that his appellate lawyer had failed to raise. One of these was that he had been asleep during much of his trial and that a diminished capacity defense should have been raised. On December 7, 2008, the court of appeals denied the motion. The court indicated that although a collateral attack was a "challenge to a prior judgment or conviction that is raised in the context of a subsequent case," petitioner had not identified any new case

3

in which his conviction was being used against him and he had no matter pending before the court, making it "unclear under what authority [petitioner] is asking the court to act." The court added that in any event, the submissions were "insufficient to develop any grounds for relief." Dkt. #13, Exh. C.

Petitioner filed the instant habeas petition on March 31, 2008. On June 18, 2008, the court dismissed the petition without prejudice after petitioner failed to pay the $5 filing fee or submit an application for leave to proceed *in forma pauperis*, as the court had directed him to do in a previous order. However, upon receipt of the filing fee and a supplemental memorandum from petitioner, the court vacated that judgment and reinstated the petition on July 3, 2008.

Reviewing the petition and its supplement preliminarily, the magistrate judge ordered the state to respond to the following allegations of the petition:

> 1) "Diminished Capacity" because petitioner was on a heavy dose of LSD when he committed the crimes and also suffers from schizophrenia;
>
> 2) he was asleep during "the majority of" his trial;
>
> 3) his guilty plea was not entered knowingly and intelligently because the court failed to advise him that he could receive a maximum sentence of life imprisonment without the possibility of parole;
>
> 4) his trial lawyer provided ineffective assistance in "failing to present all relevant psychiatric evidence in support of the affirmative defense in phase two of the bifurcated trial" (dkt #5, p. 2-3); and

4

5) his sentence is unduly harsh in light of his mental illness.

The magistrate judge observed that although petitioner had not raised his first two claims on direct appeal, he had alleged in his petition that he had presented them in a collateral attack and that he had exhausted his state court remedies.

Petitioner's statutory one-year limitations period ran on August 20, 2008. 28 U.S.C. § 2244(d)(1)(A); Duncan v. Walker, 533 U.S. 167, 180 (2001) (filing of federal petition does not toll one-year deadline).

OPINION

Instead of responding to the allegations of the petition, respondent filed the instant motion to hold the petition in abeyance pursuant to Rhines v. Weber, 544 U.S. 269, 277 (2005). In Rhines, the Supreme Court considered whether a federal district court has discretion to stay a mixed federal habeas petition, that is, a petition containing both exhausted and unexhausted claims, to allow the petitioner to present his unexhausted claims to the state court in the first instance and then return to federal court for review of his perfected petition. Taking into account the interplay between the one-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2244(d), and the total exhaustion requirement of Rose v. Lundy, 455 U.S. 509 (1982), the Court ruled that a district court has such discretion in cases like this one in which

5

outright dismissal of a mixed petition could jeopardize the opportunity for any federal review of the unexhausted claims. Id. at 275. The Court cautioned, however, that use of the stay-and-abeyance procedure was a proper exercise of discretion only if it was compatible with the Antiterrorism and Effective Death Penalty Act's objectives of encouraging finality of state court judgments and streamlining federal habeas proceedings by requiring petitioners to first exhaust their claims in the state courts. Id. at 277. Stay and abeyance is available only if there was good cause for petitioner's failure to exhaust his claims in state court first, the unexhausted claims are not plainly meritless and the petitioner does not appear to be engaged in abusive litigation tactics or intentional delay. Id. If the court determines that a stay is inappropriate and dismissal of the entire petition would "unreasonably impair the petitioner's right to obtain federal relief," the court should allow the petitioner to delete the unexhausted claims and proceed with the exhausted claims. Id.

In deciding whether a stay is appropriate, a threshold question is whether one or more of the petitioner's claims are unexhausted. A claim is not exhausted if the petitioner "has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). Respondent contends that petitioner's claims that he was asleep during most of the trial and that a diminished capacity defense should have been raised are "unexhausted" because petitioner can raise the claims in state court by filing a post-conviction motion pursuant to Wis. Stat. § 974.06. That statute provides a vehicle by

6

which a prisoner may raise constitutional issues after the time for direct appeal has expired, but only if the prisoner can establish a "sufficient reason" for not raising them on direct appeal or in any prior post-conviction motion. Wis. Stat. § 974.06(1), (4). Ineffective assistance of counsel can provide such a reason. State ex rel. Rothering v. McCaughtry, 205 Wis. 2d 675, 682-83, 556 N.W. 2d 136, 139-40 (Ct. App. 1996). Respondent argues that because petitioner has asserted (at least in his state court filings) that his lawyer omitted the diminished capacity and sleeping during trial issues that petitioner now seeks to raise, Wis. Stat. § 974.06 affords petitioner a state law remedy that he must exhaust before proceeding on the new claims.

But what of the "collateral attack" that petitioner filed in the state appellate court? Respondent suggests that that motion does not "count" towards exhaustion because it was not the appropriate procedural vehicle for the presentation of petitioner's claims. However, a petitioner who fails to present his claims to the state courts in the appropriate procedural context may nonetheless be found to have satisfied the exhaustion requirement "if it is clear that [his] claims are now procedurally barred under [state] law." Castille v. Peoples, 489 U.S. 346, 351 (1989) (citing Engle v. Isaac, 456 U.S. 107, 125-26 n. 28 (1982)). (In that situation, it is the doctrine of procedural default, not exhaustion, that bars consideration of the petitioner's claims. O'Sullivan v. Boerckel, 526 U.S. 838, 850-51 (1999) (Stevens, J., dissenting) (giving detailed explanation of difference between exhaustion and procedural

7

default).) Whether petitioner's failed attempt to file a collateral attack in the court of appeals will operate to bar him from raising the same claims in a postconviction motion pursuant to Wis. Stat. § 974.06 is not entirely clear from the appellate court's order. On the one hand, the court of appeals plainly was of the view that petitioner's motion for collateral attack was not a proper procedural mechanism by which to present his claims. On the other hand, the court's statement that petitioner's submissions were "insufficient to develop any grounds for relief" suggests that the court found no merit to the motion, whether properly filed or not. Given the closeness of the question and petitioner's failure to oppose the motion to stay, I will accept respondent's position and find that petitioner may still raise in state court his claims of sleeping during the trial and diminished capacity.

Because the petition presents a mix of unexhausted and exhausted claims and dismissal of the petition in its entirety would preclude future consideration of petitioner's exhausted claims, I must consider whether petitioner has good cause for his failure to exhaust and whether his claims have potential merit. (There is no indication that petitioner has engaged in intentionally dilatory litigation tactics, which is the third of the Rhines factors.) The Supreme Court has suggested that "a petitioner's reasonable confusion about whether a state filing would be timely" would constitute good cause for him to file in federal court before exhausting his state court remedies. Pace v. DiGuglielmo, 544 U.S. 408, 416 (2005). In this case, petitioner attempted to exhaust his claims by filing a motion for collateral attack

8

in the state appellate court and he appears to have filed his habeas petition with the understanding that his claims had been exhausted. In light of the fact that petitioner suffers from mental illness, is proceeding *pro se* and received no direction from the state appellate court regarding the proper manner in which to raise his claims, I am satisfied that his premature filing of his federal petition was the result of "reasonable confusion" meriting a finding of good cause.

Further, I am unable to conclude from the limited record before me that petitioner's claims have no potential merit. If petitioner was in a medication-induced sleep for significant portions of the trial, as he alleges, this raises the question whether he had the requisite competency to be tried, Drope v. Missouri, 420 U.S. 162, 171 (1975) (person who lacks capacity to consult with lawyer and assist in preparing defense may not be tried), and whether his trial lawyer was ineffective for not bringing the issue to the court's attention. Although I have serious questions about the veracity of petitioner's bare-bones allegation, at this phase of the proceeding I cannot say that the claim lacks *potential* merit.

Petitioner's "diminished capacity" claim is more complicated. Petitioner asserts that a defense of "diminished capacity" should have been pursued at his trial because there was evidence that he was intoxicated on LSD at the time he committed his crimes and he also suffers from schizophrenia. Because petitioner was allowed to present evidence of his drug use and mental condition at the responsibility phase of his bifurcated trial, I infer that

9

petitioner is contending that his lawyer should have pursued a diminished capacity defense to negate a finding of guilt. Wisconsin allows the admission of psychiatric evidence during the responsibility phase of a bifurcated trial to show that a person should not be held morally responsible for his crimes, but it does not allow such evidence to be used during the guilt phase to show that the defendant lacked the mental capacity to form an intent to commit the crime alleged. Morgan v. Krenke, 232 F.3d 562, 564 (7th Cir. 2000). Accordingly, to the extent petitioner is arguing that a diminished capacity defense should have been waged during the guilt phase on the basis of his mental impairments, that claim has no merit because Wisconsin does not allow that defense. However, Wisconsin has made an exception for psychiatric opinion testimony on the capacity to form intent if the opinion is based solely on the defendant's voluntary intoxication. State v. Flattum, 122 Wis. 2d 282, 288, 361 N.W. 2d 705 (1985). If petitioner had viable evidence of diminished capacity based *solely* upon his LSD use and not his mental health history, the evidence may have fallen into this exception and been admissible to negate a finding of guilt.

However, petitioner waived his right to a trial on the guilt issue and entered a guilty plea. Because he pleaded guilty, petitioner must show not only that there was some evidence that would have supported a voluntary intoxication defense and that the evidence was likely to have been admitted, but also that his lawyer's advice concerning the plea was outside "the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S.

10

52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). In addition, he must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59.

In its current form the petition lacks any allegation that petitioner's trial lawyer provided ineffective assistance in connection with the decision to plead guilty on the first phase of the bifurcated proceeding. However, a claim of ineffective assistance of counsel in connection with the plea appears to be the only pathway for raising the voluntary intoxication argument. *Pro se* pleadings are to be read liberally and I have already decided to stay the petition to allow petitioner to exhaust his competency claim. For these reasons, I will construe petitioner's "diminished capacity" claim as encompassing a claim of ineffective assistance of trial counsel and will allow him to return to state court to pursue that claim as well.

A few additional comments are in order, mainly for petitioner's benefit. First, the Wisconsin courts distinguish claims challenging the effectiveness of *post-conviction* counsel from those challenging the effectiveness of *appellate* counsel. Rothering, at 678-79, 556 N.W.2d at 138. The distinguishing factor is the deficiency alleged. Id. Where counsel's allegedly ineffective conduct related to proceedings in the trial court that are prerequisites to filing a notice of appeal, for example, by failing to request a post-conviction evidentiary hearing before the trial court, then the error relates to post-conviction representation and

11

the proper forum for bringing an ineffectiveness claim is the trial court.  Id. at 681, 556 N.W.2d at 139 (claim of ineffective assistance of post-conviction counsel should be raised in the trial court either by a petition for habeas corpus or a motion under Wis. Stat. §974.06).  In contrast, challenges to counsel's briefing and oral argument in the court of appeals, such as a claim that counsel failed to brief meritorious issues (provided those issues were preserved for appeal) should be raised by means of a petition for habeas corpus in the appellate court that heard the appeal.  State v. Knight, 168 Wis. 2d 509, 520, 484 N.W.2d 540, 544 (1992).

In this case, the claims that petitioner says his post-conviction/appellate lawyer should have raised relate to the performance of his trial counsel and potentially of the trial court as it relates to the competency issue.  Accordingly, Rothering controls.  To exhaust his state court remedies, petitioner should file a postconviction motion in the trial court pursuant to Wis. Stat. § 974.06.  To the extent he intends to pursue a claim of ineffective assistance of trial counsel, he must request the court to hold an evidentiary hearing.  See State v. Machner, 92 Wis. 2d 797, 804, 285 N.W.2d 905, 908 (1979) (holding that it is prerequisite to claim of ineffective representation on appeal to preserve testimony of trial counsel).  Further, once petitioner receives a ruling from the trial court, he must appeal that decision to the Wisconsin Court of Appeals and then the Wisconsin Supreme Court in order to satisfy the exhaustion requirement.  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (to

comply with exhaustion requirement, state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process").

The court will not hold the petition in abeyance indefinitely.  Rhines, 544 U.S. at 277.  I will grant the stay with the following conditions:  1) petitioner must file a postconviction motion in the state trial court no later than November 10, 2008; and 2) after completely exhausting his state court remedies, petitioner has 30 days from the date of the last order from the state courts in which to file a motion in this court to lift the stay.  If petitioner fails to meet these conditions, the stay may later be vacated *nunc pro tunc* as of the date the stay was entered and the petition may be dismissed.


ORDER

IT IS ORDERED that:

    1.  Respondent's motion to stay and hold the petition in abeyance is GRANTED;

    2. The instant petition is STAYED pending exhaustion of petitioner's state remedies with the following conditions:

    a) Petitioner must file a postconviction motion in the state trial court no later than November 10, 2008; and

b) after completely exhausting his state court remedies, petitioner has 30 days from the date of the last order from the state courts in which to file a motion in this court to lift the stay.

If petitioner fails to meet these conditions, the stay may be vacated *nunc pro tunc* as of the date of this order and the petition may be dismissed.

3.  The clerk of court is directed to close this case, subject to re-opening by petitioner upon the filing of his motion to lift the stay.

Entered this 3rd day of October, 2008.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge